690 So.2d 200 (1997)
STATE of Louisiana In the Interest of O.R.
No. 96-KA-890.
Court of Appeal of Louisiana, Fifth Circuit.
February 25, 1997.
Luz M. Molina, Supervising Attorney, Thomas M. Long, Student Practitioner, New Orleans, for Defendant/Appellant.
Paul D. Connick, Jr., District Attorney, Alison Wallis, Assistant District Attorney, Gretna, for Plaintiff/Appellee.
Before BOWES, DUFRESNE and DALEY, JJ.
DALEY, Judge.
This is a juvenile court proceeding in which O.R. was charged with attempted aggravated rape, a violation of LSA-R.S. 14:27 and 14:42. Following a hearing, defendant was adjudicated a delinquent as charged. Immediately following the adjudication, the Judge committed the juvenile to the Department of Public Safety and Corrections until his twenty-first birthday. Defendant appeals. For the reasons that follow, we vacate the sentence and remand the matter to the Juvenile Court for a disposition hearing in accordance with LSA-Ch.C. arts. 892 and 893.

FACTS
At the September 11, 1996 adjudication hearing, Michelle Navia (referred to throughout this memorandum as the victim) testified that on May 15, 1996, she ran away from home and spent the night at the house of a friend, Myesha Lewis. The following day, *201 May 16, 1996, in the early afternoon, she went downstairs and watched television with Sidney Lewis (Myesha's brother), and two of his friends, O.R.[1] and "Chino." While they were in the back room watching television, O.R. talked to the victim and touched her arm. When O.R. kept bothering her, she got up and sat on a stool by the bar. O.R. stood next to her and told her "here's five dollars, do your thing." When she went to grab the money as a joke, he repeated what he previously told her, causing her to go upstairs. About ten minutes later, she returned to the back room and began watching television by herself. However, shortly thereafter, O.R. and Chino joined her. O.R. sat down next to the victim and touched her on the leg, prompting her to tell him to leave her alone. When she then attempted to walk away, O.R. blocked her and grabbed her from behind. Although she was able to initially push him away, O.R. pushed her onto the couch, stood directly in front of her and pulled her legs up around his waist. When the victim told him to leave her alone, O.R. replied "girl you're about to get raped." Chino grabbed her arms and held them against her chest while O.R. pulled down her shorts and underwear. At the adjudication hearing, the victim testified that while she was being held on the sofa, she heard a zipper go down.[2] By this point in the struggle, O.R. and Chino had pulled her off the sofa onto the floor. Hearing the victim's screams, Sidney Lewis came into the room and asked them what they were doing. O.R. and Chino started laughing and released the victim when Sidney Lewis told them to do so. The victim then went upstairs, got her belongings, and left. Sidney Lewis ran after her and persuaded her to return to the house promising her that they would leave her alone. Not having anywhere to go, she went back inside to Myesha's room and called a friend to come get her. While she was in Myeshya's room, O.R. and Chino came in, apologized, and offered to buy her a beer. They left, however, when she told them to leave her alone.
The next morning at school, the victim reported the incident to an officer and gave a statement as to what had occurred. Although she was unable to positively identify O.R. in two photographic lineups, she positively identified him in court as the perpetrator.
Sidney Lewis was the only other witness who testified at the adjudication hearing. His testimony verified that of the victim insofar as he testified that on May 15, she ran away from home and spent the night at his house and that on the following day, O.R. and Chino came over. According to Lewis, O.R. and Chino went in the back by the victim while he stayed in the living room to write a letter. In the middle of his letter, he heard the victim call him to get his friends. At first he ignored her calls, but when they kept getting louder, he proceeded to the back and saw everybody on the floor, with O.R. positioned by the victim's knees. Lewis further testified that Chino and O.R. were pushing at each other, that Chino had his hand on the victim's arm and that O.R. had his hand on her legs, although he was not holding her down. When Lewis walked in, O.R. and Chino pushed the victim away and she, in turn, jumped up and started fixing her shirt and her shorts. The victim told them that they were all going to jail and then stormed upstairs, grabbed her bag, and left the house. Sidney Lewis grabbed her by the arm and told her that she had to come back inside because if the police caught her there he was going to go to jail for housing a runaway. She came back inside and went upstairs. When Sidney Lewis asked O.R. what they did to her, O.R. replied that they were just playing. O.R. then went upstairs, apologized to the victim and asked her if she wanted something to drink. After she told him to get away, Sidney Lewis, O.R., and Chino then left the house and went to the store.
After considering the testimony presented, the judge adjudicated the juvenile guilty of attempted aggravated rape.
*202 On appeal, defendant assigns the following errors for review:
1. The court appointed attorney representing the child rendered ineffective assistance of counsel in every stage of the criminal proceeding from pretrial to sentencing and thus the conviction should be overturned.
2. The Juvenile Court committed error when it sentenced O.R., without benefit of a pre-sentence investigation, relying solely on the court's narrow experience with O.R.
3. The Juvenile Court erred in excessively sentencing O.R., a minor child, to "juvenile life" in violation of O.R.'s rights under the Constitutions of Louisiana and of the United States.
We will first address the second assigned error, that the Juvenile Court erred when it sentenced O.R., without benefit of a pre-sentence investigation, relying solely on the court's narrow experience with O.R. Although a pre-sentence investigation report is not required, the Judge erred by not complying with LSA-Ch. C. art. 892 in holding a disposition hearing. While it is apparent the Juvenile Court Judge was well acquainted with O.R. and his "long and lengthy history with the court," LSA-Ch.C. art. 892 requires the trial court to conduct a disposition hearing prior to entering a judgment of disposition.[3] The purpose of such a hearing is to hear evidence in order to make a determination of whether the child is in need of treatment or rehabilitation. State in Interest of C.D., 95-160 (La.App. 5 Cir. 6/28/95), 658 So.2d 39.
LSA-Ch.C. art. 893 discusses the evidence to be produced at a disposition hearing and reads as follows:
A. At the disposition hearing, unless the child waives the presentation, the court shall hear evidence as to whether the child is in need of treatment or rehabilitation and shall make and file its findings.
B. All evidence helpful in determining the proper disposition, including oral and written reports, the report of the predisposition investigation, any reports of mental evaluation, and all other evidence offered by the child or the state shall be received by the court and may be relied upon to the extent of its probative value even though not admissible at the adjudication hearing. Upon motion of the district attorney or the child, the court may hear testimony from the victim of the offense.
C. Counsel for the state and for the child shall be afforded an opportunity to present evidence and to examine and controvert written reports so received and to cross-examine individuals preparing the reports or other witnesses who give testimony at the hearing. Sources of confidential information need not be disclosed.
D. If the court finds that the child is in need of treatment or rehabilitation as a delinquent child, the court shall proceed immediately to make any appropriate disposition authorized by Articles 895 through 899.
In the case before us, the court did not conduct a disposition hearing. While counsel did not object to the court's immediate disposition without a hearing, there is nothing in the record to indicate that counsel waived the juvenile's right to a hearing or his right to present evidence as set forth in LSA-Ch.C. art. 893. Although the Juvenile Judge was familiar with O.R. and his lengthy history with the court, the Judge's familiarity with the juvenile does not dispense with the need for a disposition hearing. Absent a waiver by the juvenile, which does not appear in this record, the Juvenile Judge erred in failing to conduct a hearing prior to entering a judgment of disposition. See State in Interest of C.D., supra.
Accordingly, we vacate the disposition and remand for a disposition hearing in accordance with LSA-Ch.C. arts. 892 and 893.
*203 In his first assigned error, defendant contends that his attorney rendered ineffective assistance of counsel at all stages f the proceedings. LSA-Ch.C. art. 809 A provides that "[a]t every stage of proceedings under this Title, the accused child shall be entitled to counsel." In addressing an ineffective assistance of counsel claim, this court in State v. Soler, 93-1042 (La.App. 5 Cir. 4/26/94), 636 So.2d 1069, 1075, writ denied, 94-0475 (La.4/4/94), 637 So.2d 450, writ denied, 94-1361 (La.11/4/94), 644 So.2d 1055, stated as follows:
Generally, the issue of ineffective assistance of counsel is a matter more properly addressed by an application for post-conviction relief, filed initially in the trial court where a full evidentiary hearing can be conducted. State v. Prudholm, 446 So.2d 729 (La.1984). Where ineffective assistance of counsel claims have been raised by assignment of error and the record discloses sufficient evidence to rule on the merits of that claim, appellate courts have addressed the merits of those claims..... Further, in assessing a claim of ineffective assistance of counsel a two-pronged test is employed. The defendant must show that (1) his counsel's performance was deficient, and (2) the deficiency prejudiced him. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To show prejudice, the defendant must demonstrate that, but for the unprofessional conduct, the outcome of the proceedings would have been different. Therefore, the defendant must show a reasonable probability that counsel's error so undermined the proper functioning of the adversarial process that the trial court cannot be relied upon as having produced a just result. Effective counsel has been defined to mean "not errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render effective assistance." State v. Ratcliff, 416 So.2d 528, 531 (La.1982). Only if defendant has shown both error and prejudice will his conviction be found unreliable and set aside. See State v. Wright, 598 So.2d 493 (La.App. 2d Cir.1992). There is a strong presumption that the conduct of counsel falls within the wide range of responsible professional assistance. State v. Myers, 583 So.2d 67 (La.App. 2d Cir.), writ denied, 585 So.2d 576 (La.1991).
The record before us does not establish that O.R. was rendered ineffective assistance of counsel. However, because this assignment is more properly addressed by an application for post-conviction relief filed initially in the trial court where a full evidentiary hearing can be conducted, and this matter is being remanded for a disposition hearing, we reserve to O.R. the right to raise this assignment by application for post conviction relief.
Finally, O.R. contends his disposition is excessive. While it does not appear from the record that the sentence is excessive, because this matter is remanded for a disposition hearing, this alleged error is pretermitted.
For the forgoing reasons, the disposition of O.R. is vacated and this matter is remanded for a disposition hearing in accordance with LSA-Ch.C. arts. 892 and 893.
DISPOSITION VACATED, MATTER REMANDED FOR A DISPOSITION HEARING.
NOTES
[1] In cross-examination, the victim testified that she knew O.R. because she had talked to him a couple of weeks ago on the telephone.
[2] The victim testified that although she did not actually see the zipper go down, she knew it was O.R.'s zipper because her shorts did not have a zipper on them. Also, Chino's zipper was in her view as she was being held on the sofa and she did not see his zipper go down.
[3] LSA-Ch.C. art. 892 reads as follows:

Prior to entering a judgment of disposition, the court shall conduct a disposition hearing. The disposition hearing may be conducted immediately after the adjudication and shall be conducted within thirty days after the adjudication. Such period may be extended for good cause.