JUDE G. GRAVOIS, Judge.
| ^Defendant S.J.,[1] a minor, who was adjudicated a delinquent on a charge of aggravated battery,[2] argues on appeal that he received an excessive sentence. For the following reasons, we affirm, finding that the sentence defendant received is not excessive, and remand with instructions for correction of an error patent.

STATEMENT OF THE CASE

On July 21, 2010, the Jefferson Parish District Attorney’s Office filed two delinquency petitions charging S.J. with aggravated battery with a knife, and resisting an officer by refusing to give his name and make his identity known to the arresting officer or providing false information regarding his identity, in violation 14of LSA-R.S. 14:34 and LSA-R.S. 14:108, respectively. The adjudication hearing was held on August 25, 2010. At the conclusion of the hearing, the trial court adjudicated S.J. guilty as charged as to both offenses.
On September 23, 2010, the trial court sentenced S.J. to the Office of Juvenile Justice (“OJJ”) until his twenty-first birthday on the aggravated battery charge. The trial court additionally sentenced S.J. to two years with OJJ on an unrelated burglary charge, and six months with OJJ on the resisting arrest charge, all to run concurrently.

FACTS

The victim, Danielle Waddell, testified at the adjudication hearing that she works as a paramedic for West Jefferson Emergency Medical Services (“EMS”). At approximately 3:00 a.m. on July 17, 2010, Ms. Waddell pulled into the driveway of her home in Marrero, Louisiana, and proceeded to exit her vehicle. As soon as she shut her car door, she “had a knife to her neck” from a man standing behind her. According to Ms. Waddell, the attacker then threatened to rape her, while slowly drawing the knife across her neck, cutting her. Ms. Waddell further testified that she was sure that her attacker was young because of his voice, and that her attacker was taller than she was because she could hear his voice above her ear. She additionally indicated that when she looked down, she saw a flame tattoo on her attacker’s right wrist.
After her attacker said he could bend her over her car, Ms. Waddell head-butted *1144 him in an attempt to “get out of the situation.” She then felt the knife against her chest. This movement caused the motion-sensitive lighting under her carport and on her neighbor’s garage to come on. Ms. Waddell’s attacker then ran off under the glare of the lights. She then fell to her knees, turned, and saw her | ^attacker fleeing. She could see that her attacker was a black male wearing dark clothing, a dark shirt with baggy jeans. She then ran inside and immediately covered her neck because she was afraid her carotid artery had been slashed. She then used her work-issued hand-held radio to summons help to her home. The attack left Ms. Waddell with a three- or four-inch cut on her neck and a cut on her chest.
Ms. Waddell testified that a short time later, a Jefferson Parish Sheriffs Office deputy came to her house and told her that they had detained a suspect. The deputy brought Ms. Waddell to a Burger King at the corner of Ames and Lapalco Boulevards, where she positively identified S.J. as the person who attacked her. She was certain of her identification because S.J. was wearing the same clothes as the person who attacked her and the tattoo on his right wrist was the same as the person who attacked her. She also recognized his voice.
Brian Laubenstein testified that he also worked at West Jefferson EMS. While responding to the radio call placed by Ms. Waddell, Mr. Laubenstein noticed a suspicious looking young man “hustling across the street, [who] kept looking over his shoulder like he was — like someone was chasing him or something.” A short time later, Mr. Laubenstein encountered a Jefferson Parish Sheriffs Office deputy. Mr. Laubenstein told the deputy that he had seen a suspicious looking young man heading towards a Burger King at the corner of Ames and Lapalco Boulevards. Mr. Lau-benstein also told the deputy that the young man was wearing “a dark shirt, dark pants, kind of baggy.” At trial, Mr. Laubenstein identified S.J. as the man that he saw heading towards the Burger King.
Deputy Brandon Veal of the Jefferson Parish Sheriffs Office testified that he received information that a black male wearing dark clothing with flame tattoos Ron his wrists had attacked Ms. Waddell. He then located S.J. at the Burger King and detained him. Deputy Veal confirmed that Ms. Waddell positively identified S.J. as the person who attacked her.
Deputy Jessica Bergeron of the Jefferson Parish Sheriffs Office testified that she took Ms. Waddell to the Burger King where Deputy Veal had detained S.J. Deputy Bergeron noted that when Ms. Waddell first saw S.J., she got upset and began to cry. She then positively identified S.J. as the person who attacked her.

ASSIGNMENT OF ERROR

In his sole assignment of error, S.J. contends that his sentence was excessive.
The Louisiana Constitution of 1974, Art. I, Sec. 20, prohibits “cruel, excessive, or unusual punishment.” See also State ex rel. T.S., 04-1111 (La.App. 5 Cir. 3/1/05), 900 So.2d 77, 79. “In considering disposi-tional options, the court shall not remove a child from the custody of his parents unless his welfare or the safety and protection of the public cannot, in the opinion of the court, be adequately safeguarded without such removal.” LSA-Ch.C. art. 901(A); State ex rel. T.S., 900 So.2d at 80. “The court should impose the least restrictive disposition authorized by Articles 897 through 900 of this Title which the court finds is consistent with the circumstances of the case, the needs of the child, and the best interest of society.” LSA-Ch.C. art. 901(B); Id. The commitment of the child to the custody of the Department of Public Safety and Corrections may be appropriate if there is an undue risk that during *1145 the period of a suspended commitment or probation the child will commit another crime, the child is in need of correctional treatment or a custodial environment that can be provided most effectively by his commitment, a lesser disposition will deprecate the seriousness 17of the child’s delinquent act, or the delinquent act involved the illegal carrying, use, or possession of a firearm. LSA-Ch.C. art. 901(C).
Much discretion is granted to the court in juvenile matters due to the special nature of the proceedings. However, the court must balance the needs of the child with the best interest of society when setting a term of commitment. State in the Interest of J.G., 94-194 (La.App. 5 Cir. 7/26/94), 641 So.2d 633. On appeal, where excessive commitment is complained of in juvenile proceedings, the record must be reviewed in order to determine whether the juvenile court imposed the least restrictive disposition consistent with the circumstances of the case, the child’s needs, and the best interest of society. LSA-Ch.C. art. 901(B); State v. In The Interest of J.M., 96-801 (La.App. 5 Cir. 1/15/97), 687 So.2d 136, 139, n. 1, writ denied, 97-734 (La.11/21/97), 703 So.2d 1298.
In this case, S.J. was sentenced to custodial placement until his twenty-first birthday, the most restrictive disposition possible. See LSA-Ch.C. art. 898; LSA-R.S. 14:34. The record indicated that S.J. was 15 years old at the time of the offense, resulting in custodial placement for approximately six years.
Ms. Waddell gave a victim impact statement that showed that she was traumatized by the event. She indicated that the aftermath of the incident was “unbearable” to her and that she has to sit in her car for ten minutes when she gets home because of fear.
A predisposition investigation (“PDI”), pursuant to La. Children’s Code arts. 888-891, was done by the Jefferson Parish Juvenile Probation Department, resulting in a report and a supplemental report being submitted to the trial court. Shernell Shepeard from the Jefferson Parish Juvenile Probation Department testified regarding the results of the PDI. She stated that her investigation revealed that the juvenile was “cutting up” in his alternative school, and further exhibited no | ¡^responsibility or remorse for the charges. The trial judge commented further on the PDI reports, noting that the juvenile had been expelled from several schools for his attitude, disrespect, and failure to comply with rules. The supplemental report revealed that the juvenile’s mother exhibited attitudes that did not encourage him to take responsibility for his behavior. The trial judge further noted that a psychological evaluation performed by Dr. Christine B. Powanda recommended placement of defendant, a 15-year-old child, in a secured facility, which in the trial judge’s experience was very rare.
In imposing her sentence on defendant, the trial court indicated:
[Wjhat you did to Ms. Waddell that night is every citizen’s nightmare. Every citizen’s nightmare that after a hard day’s work, as she said of saving other people’s lives, she comes home to her sanctuary, pulls up in her driveway and is confronted by you who puts a knife to her throat and came this close to cutting her aorta and taking her life. And what you said to her was even more chilling than what you did to her. So when she says that she believes your intent was really to rape her, I can understand how she feels that way.
The trial judge further indicated that the circumstances of this case troubled her more than ninety-eight percent of the other cases in her courtroom.
The maximum sentence is not unprecedented in cases before this Court. In *1146 State in Interest of L.A., 95-409 (La.App. 5 Cir. 12/13/95), 666 So.2d 1142, the defendant, an approximately sixteen-year old male,[3] was detained by two Jefferson Parish Sheriffs Office deputies for shoplifting. He hit one, managed to knock the other down, and fled for his vehicle. Id. at 1144. Once in his vehicle, he ignored officers’ commands to stop and struck one deputy. The defendant could have left the scene by continuing to back up; instead, he drove forward toward the second deputy, who fired his pistol into the vehicle, striking the defendant.
|9The defendant was adjudicated a delinquent for committing aggravated battery against the deputy, and was sentenced to confinement until his twenty-first birthday. On appeal, the defendant contended that this sentence was excessive. This Court disagreed, concluding simply, “[cjonsider-ing the evidence presented at trial and at the disposition hearing, we cannot say that the sentence for aggravated battery ... [was] excessive.” Id. at 1146-47.
In this case, S.J. was adjudicated a delinquent for committing aggravated battery against Ms. Waddell and was sentenced to confinement until his twenty-first birthday. The record indicates that at approximately 3:00 a.m. on July 16, 2010, S.J. accosted Ms. Waddell in her own driveway, threatened to rape her, drew a knife across her neck, causing injury, and fled only after her motion-sensitive carport lights were activated.
With these facts in mind, we find that the sentence imposed on S.J. was not excessive. This defendant’s conduct was reprehensible, even heinous. S.J. threatened to rape Ms. Waddell, could have easily killed her -with the knife, and did in fact cut her neck and chest, causing injuries. It appears that he only ran away because Ms. Waddell’s carport lights were activated. Moreover, the trial court was aware that defendant had only recently pled guilty to a simple burglary charge. The PDI’s supplemental report and the psychological evaluation reveal that the juvenile’s behavior has escalated from being expelled from school to criminal behavior and a failure to take responsibility therefor. Furthermore, the juvenile showed a lack of remorse and a lack of empathy for his victims. The record shows that the trial judge carefully considered all of the evidence and the applicable guidelines. The trial judge had a clear basis for sentencing the juvenile to custody until his twenty-first birthday as recommended by the reports.
| inFinally, it is noted that LSA-R.S. 14:34 provides that “[w]hoever commits an aggravated battery shall be fined not more than five thousand dollars, imprisoned with or without hard labor for not more than ten years, or both.” Thus, S.J. could have received a sentence of imprisonment of ten years at hard labor, a much harsher sentence than he actually received, if he had been tried as an adult.
Considering the trial judge’s wide discretion in juvenile matters, and given the particular facts of this case, we find no merit to S.J.’s contention that the trial court abused its discretion in the disposi-tional phase, and find that the sentence imposed is not excessive.

ERRORS PATENT DISCUSSION

This Court has determined that in juvenile cases, LSA-C.Cr.P. art. 920 mandates an errors patent review whether or not defense asks for one. State ex rel. T.S., 04-1111 (La.App. 5 Cir. 3/1/05), 900 So.2d 77, 82.
*1147 In the following instance, the transcript and the commitment contain discrepancies. The transcript indicates that the trial court ordered that S.J.’s sentences were to be served concurrently, while the Judgment Ordering Commitment does not so indicate. When there is a discrepancy between the transcript and the commitment, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983). Accordingly, we remand this case to the trial court for correction of the Judgment Ordering Commitment to note that defendant’s sentences are to be served concurrently.

CONCLUSION

For the above reasons, we affirm the ruling of the trial court, finding that the sentence defendant received is not excessive. We remand this matter for the trial In court with instructions to correct the judgment ordering defendant’s commitment to note that defendant’s sentences are to be served concurrently, as set forth above.

AFFIRMED; REMANDED WITH INSTRUCTIONS

. In order to maintain the confidentiality of the proceedings, as required by LSA-Ch.C. art. 412, the juvenile is referred to by his initials.

. The record contains evidence of three delinquency adjudications of defendant: simple burglary, aggravated battery, and resisting arrest by providing false information to an arresting officer. The delinquency petition on the burglary charge was filed on April 28, 2010. On appeal, defendant challenges only his sentence on the aggravated battery adjudication.

. The opinion does not specify precisely how old L.A. was at the time of the offenses. However, the opinion explains that "[t]he major part of the sentence was five years detention or until A.H.’s [sic] 21st birthday for aggravated battery.” Id. at 1143.